UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY D. MATHIAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 1:17-cv-01081-JDB-cgc |
| | ) | |
| ZACKARY EDWARDS and | ) | |
| TROY KLYCE, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On April 26, 2017, Plaintiff, Barry D. Mathias, who currently is incarcerated at the Whiteville Correctional Facility in Whiteville, Tennessee, filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (Docket Entries ("D.E.") 1, 2.) The Court issued an order on April 27, 2017, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)–(b). (D.E. 4.) On September 27, 2018, the Court dismissed Mathias's claims but allowed him thirty days to amend his complaint. (D.E. 6 at PageID 9.) Plaintiff moved for reconsideration of that order, which the Court denied. (D.E. 7, 8.) On October 24, 2018, within the thirty days allowed, Mathias filed an amended complaint, which is now before the Court.

(D.E. 9.) The Clerk shall record the Defendants as Zackary Edwards, Drug Task Force Officer; and Troy Klyce, Crockett County Sherriff.[1]

This Court previously described the facts of Mathias's complaint in detail. (D.E. 6 at PageID 27–28.) In short, Plaintiff alleged that Edwards provided false information in an affidavit for a search warrant that led to the search of the inmate's residence on September 10, 2013. (*Id.* at PageID 28.) During the search, Edwards and other officers allegedly damaged Mathias's home, beat his dog, and stole his property. (*Id.*) Officers also found marijuana and drug paraphernalia, for which the inmate was indicted, though the Circuit Court of Crockett County eventually dismissed the charges. (*Id.*) Plaintiff sought damages under § 1983 for the unlawful search and seizure of his property and for the malicious prosecution that he says followed. (*Id.* at PageID 27.) He also raised various state-law claims against Edwards and claimed Klyce failed to train his officers properly. (*Id.* at PageID 27–28.)

The Court dismissed Mathias's complaint in its entirety. (D.E. 6 at PageID 35.) The claim based on the search and seizure, the Court concluded, was untimely. (*Id.* at PageID 30.) The allegation for malicious prosecution failed because Mathias did not describe what information in the search warrant and affidavit was false. (*Id.* at PageID 31.) Nor did Plaintiff state any facts to suggest Edwards's alleged wrongdoing was the result of a municipal policy, so Klyce was not liable for Edwards's actions. (*Id.* at PageID 33.) Finally, the Court declined to exercise supplemental jurisdiction over Mathias's state-law claims. (*Id.* at PageID 34.)

---

[1] In his Complaint, Mathias spells this Defendant Klyce's surname as "Clyce." The Court has determined that the proper spelling is "Klyce." The Clerk is DIRECTED to modify the docket to reflect the correct spelling. It also appears from the amended complaint that Mathias no longer seeks redress from an Unnamed Mayor. Therefore, the Clerk is DIRECTED to remove the Unknown Defendant as a party to this lawsuit.

In his amended complaint, the inmate includes additional information about the search warrant, supplies the search warrant and affidavit in support that Edwards wrote, and provides an excerpt from the transcript of Mathias's preliminary hearing from May 25, 2016. As Plaintiff explains, Edwards stated in the affidavit for the search warrant that Sergeant Jonathan Wilson had obtained information through a "confirmed reliable confidential source" ("CS") that Mathias was selling marijuana. (D.E. 9 at PageID 48–49; D.E. 9-1 at PageID 58.) Edwards further averred that this source had previously provided information that Wilson "has confirmed to be reliable and correct" and that Wilson "has confirmed the reliability of the CS through one narcotics related arrest and through independently corroborated information regarding suspects, including vehicles used, routes taken, and location of narcotics." (D.E. 9-1 at PageID 59; D.E. 9 at PageID 49.)

Mathias then points to Wilson's testimony from the inmate's preliminary hearing, which he says contradicts the statements in the search-warrant affidavit. At the hearing, Wilson testified that on the evening of September 9, 2013—one day before the contested search and arrest of Mathias—an informant told Humboldt Police Officers, including Wilson, that "she could get some weed from Mr. Mathias, so we had set up a buy." (D.E. 9-3 at PageID 65–66; D.E. 9 at PageID 50.) Wilson testified that, at the time, the informant was not considered a reliable source and had not been used before. (D.E. 9-3 at PageID 66.) Wilson watched the informant send text messages to Mathias asking to buy 28 grams of marijuana. (*Id.* at PageID 66–67.) The informant also told Wilson that Plaintiff would be driving a white Jeep Grand Cherokee and described the precise route he would take to arrive at her residence in Humboldt, Tennessee. (*Id.* at PageID 68–69.) Wilson then drove to Highway 152, where the informant had told him Mathias would begin his trip to her residence. (*Id.*) Wilson observed a white Jeep

3

Grand Cherokee enter the highway and follow the route as the informant had described. (*Id.* at PageID 69, 71–72.) Other officers were waiting near the informant's house, where she had arranged to purchase the marijuana, and stopped the white Jeep after the driver parked in the informant's driveway. (*Id.* at PageID 72, 82.) The officers found Mathias in the Jeep, which they searched and discovered the approximately 28 grams of marijuana the informant had ordered through the text messages. (*Id.* at PageID 72–74.) They arrested Plaintiff and charged him with felony possession of marijuana. (*Id.* at PageID 75.)

Mathias claims that this new information shows Edwards lied in the affidavit for the search warrant. (D.E. 9 at PageID 50.) He asserts that because he first "discovered the lies and perjury by the Defendant Zackary Edwards" at his preliminary hearing on May 25, 2016, the statute of limitations should begin to run on that date. (*Id.*) Accordingly, his argument goes, his original complaint was timely. (*Id.* at PageID 50–51.)

The Court set forth the standards for screening and review of Mathias's § 1983 complaint in its previous order dismissing his complaint. (D.E. 6 at PageID 28–30.) Despite his amendment, and in fact because of it, the inmate's complaint still fails to state a claim for relief.

Plaintiff's entire complaint is premised on his assertion that Edwards falsely stated in the affidavit for the search warrant that Wilson had relied on a confirmed reliable confidential source. Mathias's additional documents reveal that the source Edwards describes in the affidavit is the same informant who had ordered from Mathias the 28 grams of marijuana that he was delivering when he was stopped and arrested. As Wilson testified, this source was not yet deemed reliable as of September 9, 2013. But she then ordered the marijuana through the text messages, told Wilson what color and kind of car Mathias drove, and described the route he would take to arrive at her home to deliver the drugs. As Wilson explained, "She gave us

information. Now we're going out and independently corroborating the information to make sure it's reliable." (D.E. 9-3 at PageID 71.)

And that is precisely what Wilson did. As the affidavit continued: "Sgt. Wilson has confirmed the reliability of the CS through one narcotics related arrest and through independently corroborated information regarding suspects, including vehicles used, routes taken, and location of narcotics." (D.E. 9-1 at PageID 59.) The narcotics-related arrest was of Mathias; and the independently corroborated information of suspects, vehicles, routes, and narcotics was Sergeant Wilson following Plaintiff's white Jeep Grand Cherokee to the informant's residence, using the route that she described, identifying him in the white Jeep at the traffic stop, and locating the marijuana inside the Jeep. On September 10, 2013, therefore, when Edwards wrote in the affidavit that the source "has provided Sgt. Wilson with information in the past which Sgt. Wilson has confirmed to be reliable and correct," he was referring to the information the informant had given the previous evening that led to Mathias's arrest. (*Id.*) By that time, she was a confirmed reliable source of information.

The information Edwards provided in the affidavit for the search warrant was accurate. And because that information was accurate, the inmate's various claims, all of which are premised on Edwards giving false information, must fail.

For the same reasons described in the previous order, Mathias's complaint is DISMISSED for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to further amend is DENIED as futile.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must consider whether an appeal by Mathias in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The same considerations that lead the

5

Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Mathias would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610–11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d, 944 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, §§ 1915(a)–(b). Therefore, Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Mathias, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763–64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED this 7th day of February 2019.

                                         s/ J. DANIEL BREEN
                                         UNITED STATES DISTRICT JUDGE